UNITED STATES DISTRICT COURT
NORTHERN DISTICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 18 CR 558 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| MILOT CADICHON | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Milot Cadichon pleaded guilty to one count of conspiracy to use facilities of interstate commerce in aid of bribery. That count is probation able and also carries a maximum penalty of 5 years of imprisonment. At the time of the offense, Mr. Milot Cadichon was a Chicago Police Officer who during the course of his work collected contact information for vehicle crash victims ("leads") and sold those leads to a person who sold those same leads to a personal injury attorney. The City of Chicago later had traffic crash reports for sale at its headquarters that contained that contact information but Mr. Cadichon was not authorized to sell that information on his own.

Using the Sentencing Guidelines, at first blush, Milot's offense level is 15 and his criminal offense level 1 which would suggest a range of 18 to 24 months of incarceration. The Defense objects to the 4-point increase under Section 2C1.1(b)(3) ("If the offense involved an elected public official or any public official in a high-level decision-making or sensitive position, increase by 4 levels."). A level 15, however, over states Mr. Calichon's criminal conduct. Because there were a series of small bribes that added up to $6500 to $15,000 this criminal activity is double counted by adding 2 points under Section 2C1.1(b)(1) for more than one transaction. The actual offense level should be 13 with a criminal history category of I with a range of 12 to 18 months in Zone C.

Section 3553(a)(1) factors support a sentence of probation for Milot. He is a naturalized citizen who served his county with 4 years of active duty in the United States Marine Corps and 4 years of reserve duty. He served his community as a Chicago Police Officer for almost 20 years receiving many awards and commendations.

**THE OFFENSE**

When a car accident occurs, the police write a report on a form called the Illinois Traffic Crash Report. There are over 100 data points that are collected. In the middle of the report there is an area for Unit 1 which is the car that hit Unit 2. It is often presumed that the driver of Unit 2 is the victim. The officer collects the name, address, insurance carrier, vehicle information, driver's license number and telephone number for each driver. In addition, the officer records information about the crash, weather condition, location information, vehicle type, plate numbers, vehicle identification numbers and more. Personal injury lawyers want to know the contact information for Unit 2 drivers as soon after the accident as possible.

If the crash occurs on the streets of City of Chicago and the vehicles can be moved the drivers are required to go to the nearest police station and report the crash. As part of his duties, Milot was assigned to the 2nd District desk to fill out crash reports when people came in to report an accident. Milot also responded to crashes out on the street and obtained driver information. From the information that drivers gave, Milot would later text the name and phone number to his co-conspirator, Richard Burton. At no time did Milot distribute Traffic Crash Reports to Mr. Burton or anyone else. Mr. Burton would then on an ad hoc basis decide how much to pay Milot at different times during the month for the leads that were provided. The name and phone number that Milot collected,

as a police officer, was property of the City of Chicago which Chicago. Those names and numbers were included in Traffic Crash Reports which were later sold by the Chicago Police Department for $5.00. Milot was not authorized to sell those names and phone numbers and took bribes to do so.

It appears that Milot's wife was involved in an automobile accident prior to this incident. They were approached by Mr. Burton who got her an attorney. Mr. Burton then became quite interested in the fact that Milot was a police officer. Mr. Burton offered Milot money in exchange for the information he provided. While Milot's knowledge of whether or not this was illegal (and it was) is inconsequential, he did clearly benefit by providing the information.

This offense has a victim. As in all bribery cases the victim is the public for which the Defendant has and will show contrition. But Greg Smith of the Probation Department claims that "those whose personal information was released" are also victims. (Sentencing Recommendation p.2). The extent of their victimization is hard to calculate given the fact that the Chicago Police Department sold the "victims" names, phone numbers, address, VIN of their vehicle and more for $5.00 just weeks later. Now that the Crash Report system is automated, the Chicago Police Department records department reports that Crash Reports are available a week or less after the accident. The Chicago Police Department website advertises that Crash Reports for the last 7 years are available online for $6.00 a piece. (http://home.chicagopolice.org/online-servies/traffic-crash-reports/)

**SENTENCING GUIDELINES**

The base offense level for bribery is 12 but if the defendant is a public official the base offense level is 14 as is the case with Milot. Additionally, 2 points are added because the amount of the bribes totaled between $6500 and $15,000. Then the Guidelines call for the addition of 2 more points because the offense involved more than one bribe. This overstates the criminal activity in this case. Over an 18-month period Milot provided hundreds of names and numbers of people involved in crashes just prior to their public release and the amount added up to $10,000. The defendant that takes a $10,000 bribe to give false testimony or grant access to the Police Department's computer will get less points than Milot.

The Government is asking the Court to add an additional 4 points under Section 2C1.1(b)(3) which calls for an increase if the "offense involved an elected public official or any public official in a high-level decision-making or sensitive position . . . "There is no mention in the actual section of a beat officer as a high-level person. In the application notes 4(A) the term "High-level decision-making or sensitive position" is defined as "a position characterized by a direct authority to make decisions for, or on behalf of, a government department, agency, or other government entity, or by a substantial influence over the decision-making process." This does not sound like an officer that patrols a beat. Under Note 4(B) there are examples of public officials in a high-level decision-making position such as: "a prosecuting attorney, a judge, an agency administrator, and any other public official with a similar level or authority." Still no mention of officer that patrols a beat or sits a desk in the district filling out reports. Then in the last sentence there are "[e]xamples of a public official who holds a sensitive

position including juror, a law enforcement officer, an election official and any other similarly situated individual."

Such an increase is appropriate in the following situations: When the defendant is the deputy liquor commissioner who uses his position and authority to get money in exchange for liquor licenses. *U.S. v. Hill, 645 F.3d 900 (7th Cir. 2011)*. The increase is not an abuse of discretion when analysts for a member of the Cook County Board of Review (which is the body that reviews real estate taxes) are bribed to get their real estate taxes reduced. *U.S. v. Hawkins 777 F.3d 880 (7th Cir. 2015)*. The increase is appropriate when the director of the Indianapolis Land Bank (which is a municipal institution created to return tax-delinquent properties back to productive use) directed the Land Bank to sell certain valuable properties to certain organization who then transferred the properties to the defendant's business partner. *United States v. Walton 874 F.3d 990 (7th Cir. 2017)*.

The 4-point enhancement for public official in a high-level decision-making position should not apply to the patrol officer who passed on drivers' names and numbers from crashes especially when this same information was made available to the public weeks later. The names and numbers were available to civilian workers at the district station who walked past the crash reports siting on Milot's desk before the end of his shift. After the Crash Reports left the district station, they were brought to the Records Processing Section. The civilian workers in the Records Processing Section had access to the Crash Reports prepared by Milot. Milot's offense had nothing to do with decision-making. This had nothing to do with sensitive information or sensitive positions. Under the Sentencing Guidelines, the offense level is 13 with a criminal history category of I with a range of 12 to 18 months in Zone C.

**SECTION 3553(A)(1) FACTORS**

3553(a)(1) first requires the Court to consider the nature and circumstances of the offense which have been discussed above in this memorandum. The section also requires the Court to consider the history and characteristics of Milot. Up until this case, Milot lived his life according to the oaths he has taken.

He came to this country in the early 1980's from Haiti and became a naturalized citizen. He took the following oath:

> I hereby declare, on oath, that I absolutely and entirely renounce and abjure all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty, of whom or which I have heretofore been a subject or citizen; that I will support and defend the Constitution and laws of the United States of America against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I will bear arms on behalf of the United States when required by the law; that I will perform noncombatant service in the Armed Forces of the United States when required by the law; that I will perform work of national importance under civilian direction when required by the law; and that I take this obligation freely, without any mental reservation or purpose of evasion; so help me God."

He followed that oath and enlisted in the United States Marine Corps on July 25, 1991. The PSR at paragraph 72 summarizes his service to our country: While enlisted in the Marine Corps, the defendant attained the rank of Corporal and served as a rifleman and squad leader. Among his awards were the National Defense Service Medal, Sea Service Ribbon, Good Conduct Medal and Armed Forces Expeditionary Medal. The defendant also received a Meritorious Mast, Certificate of Achievement, and a Sharpshooter Badge. From July 1995 through July 1996, the defendant was assigned to the Marine Corp Reserve. [He was on active reserve for 1 year of a total of 4 years of reserve] During his

term of active duty, the defendant served in Haiti as part of Operation Restore Freedom. He also served outside of the United States in Japan (Okinawa) and Thailand. Within the United States he served at Ft. McCoy, Wisconsin; Camp Pendleton, California; and Ft. Bragg, and North Carolina., Additionally, the defendant served aboard the aircraft carriers USS Kitty Hawk and USS Independence.

As a U.S. Marine he followed the oath that he took.

> I, Milot Cadichon, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to regulations and the Uniform Code of Military Justice. So, help me God.

In September 1998, he became a sworn member of the Chicago Police Department. During his time as an officer serving the people of Chicago, he was recognized seven specific times for exemplary work in Honorable Mentions and twice in Department Commendation Awards. He swore once again to "support the Constitution of the United States, and the Constitution of the State of Illinois." He swore to "faithfully discharge the duties of the office of such, according to the best of [his] ability."

Milot was born in Haiti and is currently forty-six (46) years old. He immigrated to the United States with his mother and older brother. Milot attended Bowen High School on the southeast side of the City of Chicago. In high school he wanted to serve his new country and as indicated above he enlisted in the United States Marine Corp in the early enlistment program. Milot received a discharge under honorable conditions from the United States Marine Corp.

When he returned to Chicago, he worked odd jobs and was appointed to the Chicago Police Department on 13 October 1998. He got married in 1997 and had two sons, Gary and David. David is afflicted with severe autism and his essentially nonverbal. While his first marriage ended in divorce, Milot is very close to both of his sons especially David. David lives with Milot's ex-wife, who he has a very good relationship with, and he sees David three to four times a week. In 2009 Milot remarried and has a very successful relationship with his current wife. Milot was able to purchase a home on the South side of Chicago where he supports and lives with his wife and his seventy-seven-year-old mother. His mother is in failing health having suffered from a heart attack and diabetes. Milot is very active in his church, Elgise Haitienne De La Grace and is very active in the Chicago Haitian Community.

In 2007, Milot took a leave of absence from the police department to be part of a U.S. State Department/UN (PAE a subsidiary of Lockheed Martin was the contractor) to help train the civilian police force in Haiti. Milot was part of an international effort to stabilize the government and suppress gang related violence. He came back to active duty at the Chicago Police Department one year later. Because of his service in Haiti he did not have the requisite 20 years of service with CPD prior to his termination in 2018 to receive a pension.

Not many people take as many oaths as Milot Cadichon. Not many people spend almost their entire adult life in service of their country, their city, and their fellow man. His days of law enforcement are over. He will never be called Officer Cadichon again. After 4 years active in the Marine Corps and 20 years in the Chicago Police Department he is ineligible to receive his police pension due to this matter. He understands that he

has nobody to blame but himself. The financial hardship of the last year has been overwhelming and caused Milot to file bankruptcy. He has taken the initiate to go to school to get his commercial driver's license so that he can make a living and take care of his family.

**SENTENCING:**

Many have said that "no man walks alone in this world" and unfortunately the acts of a single person have a profound and sobering effect on the family in addition to the individual himself. It is clear that Milot's own actions have placed himself before this Court and he has no person or entity to cast the blame to. To this end, Milot has not. His arrest has not only humiliated him but has also had an amazing self-acceptance of his crime. Milot immediately took responsibility for his crime. Some may call this an act of survival, but Milot views it as an act of attrition. As this court can readily grasp from the Presentence Investigation, Milot has spent his entire life without coming in contact with the criminal justice system. His life has been quite the opposite in that he has served his country and his city. He is not seeking justification, because he is in fact guilty, but he does ask for mercy. Milot is not a criminal and his acts were an aberration from the normal and customary manner in which he has conducted himself as a citizen. He has lost his pension, the admiration of his coworkers and most importantly his dignity. This has proven to be difficult and trying. As Judge Fanco aptly stated in *United States vs. Braun, 382 F.Supp.2d 214 (U.S.D.C., SD NY 1974)* that:

> "The defendant has suffered enough already" is a familiar refrain to sentencing judges, but the familiar is not necessarily contemptible. The refrain tells a true and moving story.

Milot comprehends that he may very well be sent to prison but imprisonment punishes. It is respectfully submitted that to send Milot to prison would be excessive and not in accord with the crimes he has committed. The crime that Milot has pled guilty to is definitely situational in nature and is extremely out of character in light of his entire life. It is highly doubtful that he will ever come before this or any court of law again. Therefore, it is strongly and most respectfully submitted that this court imposes a sentence of community service, in home incarceration or any alternative to incarceration.

Milot is asking the Court for a sentence of probation. This would provide just punishment for the offense and allow him to continue and complete his training for his next vocation as a truck driver pursuant to Sections 3553(a)(2)(A) and (D). During his term of probation, we are asking that the Court not subject Mr. Cadichon to drug testing. He has spent his life in law enforcement, has never had a dirty drop, and has indicated that he does not consume drugs or alcohol. The Defense is also requesting that Mr. Cadichon not be subjected to community service during a time of prolonged unemployment as he may need that time for training and side jobs. The Defense requests that the Court not impose any fines in this matter given that he recently declared bankruptcy and his net worth is -$235.34. Milot is an excellent candidate for probation, a sentence of incarceration would be a hardship to his family and handicap son and such a sentence would be fair and not depreciate the seriousness of the crime he has pled to

Respectfully submitted,

s/ Michael J. Levisohn
s/Timothy M. Grace
Attorneys for the Defendant
311 W. Superior Street, Suite 215
Chicago, IL 60654/ 312-943-0600
mlevinsohn@dmdchicago.com